MILLER *v.* SMITH.

1. VENDOR AND PURCHASER—CONTRACT—PAROL EVIDENCE.

Defendants, who were the owners as heirs of an undivided interest in certain real estate, executed a receipt to plaintiff for $50, reciting that it was the first payment of $11,000 for the price of the property described, the balance to be paid as soon as defendants furnished perfect title; that they agreed to give a warranty deed to plaintiff or his assigns as soon as the price was tendered. *Held,* that such instrument constituted an unambiguous contract in writing, and could not, therefore, be varied by parol evidence of a condition that it was to be operative only if defendants were able to induce the other heirs to join in the conveyance.

2. SAME—TENDER—WAIVER.

Where plaintiff, holding a contract to purchase certain real estate from defendants, mother and son, demanded a deed, through his agent, from the son, stating that the money would be paid when the deed was delivered, and the son stated that his mother refused to sign the deed, that the deal was off, and that they were selling the property too cheap, such facts constituted evidence of waiver of a tender of the balance of the price.

3. SAME—ACTION—RECOVERY—SPECIFIC PERFORMANCE.

Where defendants, who were the owners as heirs of an interest in certain real estate, contracted to sell the same, and agreed to make title to the entire property, the fact that specific performance could not be decreed was no ground for denying the purchaser's right to damages for defendants' breach.

Error to Wayne; Davis, J., presiding. Submitted April 12, 1905. (Docket No. 59.) Decided June 13, 1905.

Assumpsit by Richard L. Miller against John F. Smith and Mary Smith for breach of a contract to convey certain real estate. There was judgment for defendants on a verdict directed by the court, and plaintiff brings error. Reversed.

*Wilkinson, Post & Oxtoby,* for appellant.

*James Swan,* for appellee.

McALVAY, J.   The plaintiff was a real estate dealer in the city of Detroit.   Defendants were the owners of an interest in certain real estate situated in said city.   This property had belonged to one Henry Smith, who died leaving a widow, the defendant Mary Smith, and ten. children.   One of these children quitclaimed to the other nine heirs, leaving each the owner of a one-ninth interest. On June 3, 1903, the widow and one of the sons (John F. Smith), the defendants in this suit, entered into the following agreement with plaintiff, through his agent, R. Z. Chandler, for the sale of this property :

> "DETROIT, June 3d, 1903.
> "Received of Richard L. Miller $50 as first payment of $11,000 for the purchase of Lots Nos. 8 and 9 block 27, being 100 feet facing Fort Street, and being the northeast corner of Eighth and Fort Streets, Detroit, Mich., the balance of the purchase price being payable as soon as we furnish perfect title to above property, we to furnish a Burton or Union Trust abstract.
> "We further agree to give a warranty deed to Richard L. Miller or his assigns as soon as purchase price is tendered.
> > "JOHN F. SMITH.
> > "MARY SMITH."

The Union Trust Company abstract, duly certified, was furnished as agreed, June 12, 1903, which showed the title as above stated.   Plaintiff, at the time he secured the agreement above set forth, from defendants, had a prospective purchaser, and on June 11th entered into a written agreement with him to sell this property for the sum of $12,150.   The agent, Chandler, informed defendant John F. Smith that plaintiff was selling the property to Thomas H. Long, and thereupon negotiations were entered into between defendant John F. Smith and Mrs. Long, the wife of Thomas Long, in which Smith agreed to sell the property to her for $11,000, less $50 that had

been paid on the property. Defendant Mary Smith refused to sell for less than $14,000. Plaintiff afterwards, through his agent, Chandler, demanded the deed from John F. Smith; stating that the money would be paid when the deed was delivered. Smith said his mother refused to sign the deed; that the deal was off; that they were selling too cheap. The parties understood the condition of the title at the time the contract was made. Plaintiff brought suit upon this agreement to recover his damages on account of the refusal of defendants to perform on their part. The case was tried before a jury, and, upon the close of plaintiff's case, in which the foregoing facts were made to appear, the court, on motion of defendants' counsel, instructed the jury to return a verdict for defendants. Plaintiff brings the case to this court on writ of error. Error is assigned upon the action of the court in directing a verdict for defendants, and the charge to the jury in connection therewith. The errors assigned relative to the charge of the court will first be considered.

The court charged that, in order to know what the real contract or agreement was between these parties, it must be supplemented by the oral proof which had been admitted; that by the talk between the parties "it appears and is conceded by counsel that it was contemplated that the other heirs should join in the conveyance,   *   *   * that it was contemplated by these parties, before recovery could be had, there should have been a tender made by the plaintiff, or else it should be shown that there was such a refusal made as would show that he was not resting in his own wrong, or that he was acting wrongfully and contrary to the spirit of this agreement or arrangement between these parties."

The suit was brought upon the written agreement signed by defendants, above set forth. The writing is unambiguous and complete, and requires no extraneous evidence to explain its meaning. It is fundamental that no oral evidence to change or vary its terms would be admissible. As far as this record shows, the writing was

signed by defendants with full knowledge of its contents. It is a clear agreement for the sale of certain real estate, properly described, for a certain price, upon certain terms, and acknowledges the receipt of part payment. Plaintiff, having accepted this agreement by making part payment, became a party to it. In the case of *Mull* v. *Smith*, 132 Mich. 618, where, in relation to a memorandum for the sale of real estate, the questions here raised were discussed, the court said:

"When the memorandum of the oral contract is in writing and signed by the vendor, it is not the contract, but a memorandum, which makes it binding upon him if accepted by the vendee. This is valid evidence of the contract. But can it bind him if not binding upon the vendee? The statute differs from the English statute, which binds the one sought to be charged only when he has signed it. Under such a statute it may be doubtful if, relying solely upon the memoradum signed by himself, the vendor could enforce or recover damages for the breach of the contract. * * * But whether this is so or not, we cannot doubt that, before either party can make the contract the basis of a suit or action, the element of mutuality must be discernible. See *Wilkinson* v. *Heavenrich*, 58 Mich. 574. * * * It being admitted that the vendor has made and the vendee accepted such a memorandum, it must, in the absence of fraud, be taken as conclusive, not subject to variation by parol evidence, and, if it contains all of the requisites of a valid contract, it is binding on both; otherwise not."

In the case at bar the memorandum is much more full and explicit in its terms than in the case above quoted. It contained all the necessary elements of a land contract, together with the acknowledgment of acceptance and payment of a part of the purchase price by plaintiff. It was a valid contract for the sale of land, upon which an action might be brought by either party to recover damages claimed on refusal to perform by the other. It is admitted that the plaintiff knew the condition of the title; that there were others besides the defendants who held interests which must be acquired before defendants could convey

to plaintiff. What arrangement these defendants might make with the other heirs in order to secure good title was no concern of the plaintiff. They had agreed to sell the land to him for a certain price, and warrant the title. The contract was not conditioned upon procuring the transfers from the other heirs. Defendants had undertaken to procure complete title, and failure to do so would constitute default in their contract.

The demand for the deed and the refusal by defendants in the manner above set forth was evidence tending at least to show that tender of the balance of the purchase price was waived by defendants, and we need not consider at this time whether the circumstances would warrant a holding that a tender would be futile and unnecessary. The court was in error in holding that the writing did not show the agreement between the parties, and in taking from the jury the question of waiver of tender.

The court charged and held that plaintiff could not recover, unless, in a court of equity, specific performance of this contract would have been granted. Specific performance of a contract to sell land cannot be enforced where the vendor is not the owner. In such case the remedy of plaintiff is in an action at law. Defendants contracted to sell the land in question, of which they owned but an undivided interest. In case of failure to perform on their part, the fact that specific performance could not be enforced would not bar plaintiff from his right of action at law to recover damages for such failure.

As to the instruction of the court to the jury to return a verdict for the defendants, considering our conclusions in discussing other errors assigned in the case, it is only necessary to say that such instruction was erroneous.

The judgment is reversed for the reasons stated, and a new trial ordered.

MOORE, C. J., and CARPENTER, OSTRANDER, and HOOKER, JJ., concurred.